

FILED

July 30, 2021

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

9:11 A.M

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **JEFF WALLIS,** | ) | **Docket No. 2017-08-0772** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 2656-2017** |
| **BAPTIST MEMORIAL HOSPITAL,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Allen Phillips** |

---

## COMPENSATION ORDER GRANTING SUMMARY JUDGMENT

---

This case came before the Court on July 14, 2021, on Baptist's Second and Third Motions for Summary Judgment. In its motions, Baptist asserted several bases for summary judgment, including the affirmative defense of misrepresentation.[1] The Court finds the misrepresentation defense is dispositive and grants summary judgment on that ground.

### History

Mr. Wallis alleged a back injury occurring on January 8, 2017, when lifting a patient. Baptist first accepted the claim but later denied it after review of medical information suggesting the injury was not causally related to the incident. When the parties failed to resolve the dispute, Mr. Wallis, then proceeding as a self-represented litigant, requested an Expedited Hearing.[2]

At that hearing, Mr. Wallis testified he injured his back in an automobile accident in 2003 and that treatment culminated in a fusion of the L5-S1 level of his spine. He said he "went through the surgery, had time off," and that his "back was fine" until the injury at Baptist.

---

[1] The other grounds were medical causation, that the "proximate cause" of Mr. Wallis's injury was his knowing violation of a lifting restriction, and that Mr. Wallis sustained no increased impairment related to his injury.

[2] Before the Court set an Expedited Hearing, Baptist filed its first motion for summary judgment on grounds of inadequate proof of causation. The Court denied the motion, finding that two competing opinions, as detailed below, created a genuine issue of material fact.

1

At the time of the Expedited Hearing, the Court had two medical opinions. First, Dr. Laverne Lovell questioned whether Mr. Wallis had a solid fusion from his 2008 surgery based on initial x-rays in his office. So, he ordered a CT scan that a radiologist interpreted as showing some evidence of a fusion but no fracture or loosening of the "hardware" implanted during the 2008 surgery. After he reviewed the CT, Dr. Lovell said he did not think Mr. Wallis was "fused across the disc space." He also stated that "way more than 50%" of Mr. Wallis's problems after the incident at Baptist stemmed from the lack of a solid fusion, a medical condition known as a pseudoarthrosis. He recommended Mr. Wallis either return to Dr. Francis Camillo, the surgeon who performed the 2008 surgery, or continue treatment with him under private insurance. Mr. Wallis opted to return to Dr. Camillo.

Dr. Camillo interpreted the CT as showing a broken screw in the hardware he implanted in 2008. He could also "see where the screw is broken" on x-rays. Dr. Camillo believed the screw "more than likely" broke because of the incident at Baptist. Specifically, Dr. Camillo said: "What I believe is he had a pseudoarthrosis. I believe when he was holding the patient more than likely he fatigued the screw, and it broke, and now this is the increase in his pain in his back. . . I do believe that this was due to his work injury."

Dr. Lovell reviewed Dr. Camillo's records and x-rays. He agreed that Dr. Camillo's x-rays showed a broken screw, but he maintained it was not broken when he saw Mr. Wallis. Dr. Lovell stated he would "go on record" with his belief that the screw fractured between the time he saw Mr. Wallis and the time Dr. Camillo saw him, meaning the screw broke after the incident at Baptist.

Based on the evidence, the Court found Mr. Wallis's testimony more consistent with Dr. Camillo's opinion that the screw broke on January 8, and it ordered that Baptist pay for a revision fusion surgery, as Dr. Camillo recommended. Dr. Camillo performed the surgery, and Baptist paid for it.

After the Expedited Hearing, and during discovery, Baptist learned that Mr. Wallis previously injured his back in a 2010 automobile accident. According to medical records, Mr. Wallis complained of left-leg pain consistent with an L5 radiculopathy. Baptist also learned that Mr. Wallis sustained a back injury in 2012 while working for Lowe's Home Improvement Center. Medical records described that injury as a pseudoarthrosis at the L5-S1 level. Baptist further learned that Mr. Wallis settled a workers' compensation claim against Lowe's for the injury. The Mississippi Workers' Compensation Commission records documented a pseudoarthrosis and that Mr. Wallis had a permanent restriction of "light lifting."

The parties also obtained medical proof after the Expedited Hearing. Specifically, they deposed Dr. Samuel Schroerlucke, an orthopedic surgeon who saw Mr. Wallis for an impairment evaluation because Dr. Camillo does not perform these evaluations. Dr. Schroerlucke assessed a 12% permanent impairment based on the *AMA Guidelines for*

*Evaluation of Permanent Impairment, 6th Edition* criteria for a pseudoarthrosis. In his office note, Dr. Schroerlucke stated that it was his "opinion that the surgery by Dr. Camillo was a result of [Mr. Wallis's] work injury dated January 2017 causing fractured screw in the lumbar spine." He explained that opinion in his deposition, saying that "the injury that [he] evaluated and ultimately rated was primarily caused" by the incident at Baptist.

On cross-examination, Dr. Schroerlucke said he had no medical records regarding the 2010 automobile accident or the 2012 Lowe's injury. He further testified that Mr. Wallis neither told him about those events nor did he tell him about the symptoms they caused. Thus, Dr. Schroerlucke said that Mr. Wallis's reported history of not having problems before the incident at Baptist was inconsistent with the medical records from the 2010 and Lowe's injuries.

Dr. Camillo testified that Mr. Wallis told him he was doing well in the years between the first fusion in 2008 and when he returned for the second surgery. As with Dr. Schroerlucke, Dr. Camillo testified Mr. Wallis did not tell him of the previous injuries.

Dr. Camillo said Mr. Wallis had a pseudoarthrosis, but that it was not caused by the incident at Baptist. Instead, he explained: "It's possible that the screw was holding, and he had a [pseudoarthrosis] and the screw was holding it, and the screw broke in the accident and he started getting more pain." Dr. Camillo also agreed Mr. Wallis was restricted to light duty after the surgery he performed, and that restriction would not allow Mr. Wallis to return to a nurse's aide position because of the required lifting and moving of patients.

Dr. Camillo further testified:

I think he is at risk, and most of the time he will be fine, but going forward, you know, if someone falls is he going . . . he will put himself at risk or he is not going to be able to help the patient. . . He's a liability for the institution[.]

Baptist also filed the affidavit of Dr. Lovell who maintained his previous opinion that the cause of Mr. Wallis's problems was the pseudoarthrosis rather than the work incident.

*Baptist's Position*

In support of its motions, Baptist submitted a lengthy statement of undisputed facts as required under Tennessee Rules of Civil Procedure 56.03. The Court summarizes the relevant facts as follows:

- Mr. Wallis completed an employment application with Baptist on April 9, 2015, in which he did not disclose his employment at Lowe's.
- On the application, he checked "No" in response to the questions: "Have you ever applied for or received worker's compensation?" and, "Have you ever been told by a doctor that you have physical restrictions limiting your amount of lifting [?]".

3

- Mr. Wallis received a workers' compensation settlement from Lowe's for an L5-S1 level lumbar spine injury diagnosed as a pseudoarthrosis, and it prompted a light lifting restriction, which remained in place when Baptist hired Mr. Wallis.
- On a pre-placement health evaluation form required by Baptist, Mr. Wallis disclosed only the 2003 back injury and resulting 2008 fusion surgery.
- Mr. Wallis injured his lower back in 2010 in an automobile accident.
- Both the job for which Mr. Wallis applied, and the nurse's aide job he performed when injured, required that he be able to lift and carry forty to fifty pounds, push and pull between 150 and 200 pounds, and have the ability to lift sufficient weight for lateral transfers of patients weighing between 150 and 200 pounds.
- Baptist relied upon the information Mr. Wallis provided when it determined that he met the physical requirements of the jobs.
- According to its human resources representative's affidavit, if Baptist had been aware of Mr. Wallis's light lifting restriction from the Lowe's injury, Baptist would not have hired him.
- The impairment rating from Dr. Schroerlucke was based on a pseudoarthrosis.
- The pseudoarthrosis pre-existed was not caused by the 2017 incident at Baptist.
- Dr. Lovell believed the pseudoarthrosis was the cause of the injury.

Based on those facts, Baptist argued that Mr. Wallis misrepresented his physical condition on his employment application. Further, Baptist contended it relied upon the representations in the application, and the health evaluation form, in making its decision to hire Mr. Wallis. It further noted the affidavit of its human resources representative that Baptist would not have hired Mr. Wallis to perform a job that required more than light lifting.

Baptist cited *Foster v. ESIS, Inc.*, 563 S.W.2d 180, 182 (Tenn. 1978), where the Court listed the well-established three elements of misrepresentation: 1) an employee knowingly and willfully makes a false representation of his physical condition to an employer; 2) the employer relies upon the misrepresentation in deciding to hire; and 3) there is a causal connection between the misrepresented condition and the injury for which benefits are sought.

*Mr. Wallis's Position*

Mr. Wallis admitted he did not disclose his employment or injury with Lowe's. He also admitted that the settlement agreement with Lowe's included a diagnosis of a pseudoarthrosis and a light lifting restriction. Though admitting he did not tell Baptist at the time of hire, he said he revealed those facts in his deposition. Mr. Wallis admitted Baptist relied on the information he provided in the hiring process when it determined he met the minimum physical requirements for the job for which he was hired.

4

Mr. Wallis further contended that his condition had improved between the time he settled with Lowe's and his injury at Baptist. He said, "the impact of [the Lowe's injury] as to the subject 2017 injury with Baptist is an issue of credibility that [the Court] must evaluate at trial[.]"

Mr. Wallis further argued that both Drs. Schroerlucke and Camillo testified that the broken screw in his back was related to the incident at Baptist. He also said that Dr. Lovell had yet to be deposed, and that Baptist had "ventured that Dr. Lovell's opinion would not waver [sic] from his prior records and affidavit [.]" He argued in his brief that, "the pseudoarthrosis was aggravated by the subject injury with Baptist," pointing to Dr. Schroerlucke's testimony regarding the broken screw.

## Law and Analysis

Because it finds the misrepresentation defense dispositive, the Court will analyze Baptist's motion for summary judgment on that ground.

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When a defendant moves for summary judgment based on an affirmative defense, like misrepresentation, the defendant must establish the elements of the affirmative defense before the burden shifts to the nonmovant. *See Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991). If the moving party makes a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial." *Rye* v. *Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 265 (Tenn. 2015). The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that might be obtained. *Id.*

The Court finds Baptist proved the elements of a misrepresentation defense. First, Baptist established that Mr. Wallis, by his own admission, did not disclose the extent of his pre-existing condition at the time of hire. Second, Baptist established it relied upon the misrepresentation when it hired Mr. Wallis, again by his own admission. Third, though Mr. Wallis contested a causal relationship between the misrepresentation and the injury, the Court finds Baptist established that element as well.

Dr. Camillo said that the screw *possibly* broke in the incident. Though speculative as to the cause of the broken screw, this opinion does not change the fact that Mr. Wallis would not have been exposed to an incident that broke the screw but for his misrepresentation.

Further, Dr. Camillo's additional testimony is compelling. Specifically, he said Mr. Wallis was restricted to light duty after the second surgery, meaning Mr. Wallis could not

5

return to a nurse's aide position because of the required lifting and moving of patients. Dr. Camillo added Mr. Wallis would be "a liability for the institution" if he attempted that work with his restriction. The same was true when Mr. Wallis was injured at Baptist: he was working as a nurse's aide under a light duty restriction from his injury at Lowe's.

Finally, Mr. Wallis contended in his response to Baptist's statement of undisputed facts that the pseudoarthrosis was aggravated by the incident at Baptist. "An employer is not required to assume the risk of aggravating a pre-existing injury unless either some notice of the condition is given by the applicant to enable the employer to make an informed hiring decision, or the employer does not rely upon the employee's misrepresentations." *Rowland v. Carriers Ins. Co.*, 738 S.W.2d 183, 186 (Tenn. 1987). Baptist faced the unnecessary risk of aggravation because it relied on Mr. Wallis's misrepresentations, which resulted in placing him in a job beyond his restrictions.

Based on the above, the Court finds Baptist established all three elements of the misrepresentation defense. Thus, the burden shifted to Mr. Wallis to set forth specific facts showing a genuine issue for trial; he did not. It is insufficient to say that the Court may later consider his credibility at trial, or that Dr. Lovell might change his opinion at a deposition, both assertions constituting merely hypothetical evidence. Instead, the Court's focus must be on the evidence Mr. Wallis presents at this summary judgment stage. *Rye*, at 265.

The Court holds that Baptist is entitled to summary judgment on grounds that Mr. Wallis misrepresented his pre-existing physical condition.

**IT IS, THEREFORE, ORDERED** as follows**:**

1. Baptist's Motion for Summary Judgment is granted on grounds of misrepresentation, and Mr. Wallis's claim against it is dismissed with prejudice.

2. Unless appealed, this order shall become final in thirty days.

3. The Court assesses the $150.00 filing fee against Baptist, for which execution might issue as necessary. Baptist shall pay the filing fee to the Court Clerk within five business days of the order becoming final.

4. Baptist shall file Form SD-2, Statistical Data form, with the Court Clerk within five business days of this order becoming final.

**ENTERED July 30, 2021.**

6

_Allen Phillips_

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on July 30, 2021.

| Name | Via Email | Service sent to: |
|---|---|---|
| Monica R. Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com |
| J. Matthew Kirby, Employer's Attorney | X | mkirby@harrisshelton.com |

_Penny Shrum_

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

7



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court.  To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board.  *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure.  If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.  *See* Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation     $ _____ per month     Child Support     $ _____ per month

Car     $ _____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)          RDA 11082